Gustavo Ponce, Esq.
Nevada Bar No. 15084
**KAZEROUNI LAW GROUP, APC**
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
E-mail: gustavo@kazlg.com

*Attorneys for Plaintiff,*
   **Tonya**
   **Johnson**

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TONYA JOHNSON, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CREDIT ONE BANK, N.A.,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ. ("TCPA")**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     Plaintiff, Tonya Johnson, individually and on behalf of all others similarly situated ("Plaintiff"), alleges Defendant, Credit One Bank, N.A. ("Defendant" or "Credit One") "robocalled" her numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA").

2.     The United States Supreme Court articulately captured our country's sentiment in July stating, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *William P. Barr v. American Association of Political Consultation* 2020 WL 3633780 – S.Ct.-- (2020).

3.      This united distain of robocalls is due to companies like Credit One who admit making a jaw dropping 10,000,000 robocalls to people who Credit One's own records reflect are "wrong numbers" or numbers they don't have the legal right to call.

4.      Credit One brazenly violates our anti-robocalling federal law by blasting over 1,000,000 calls per day from their massive overseas calling centers in India and the Philippines.

5.      Ms. Johnson does not owe Credit One a penny and has never done business with them and despite complaining to them about the robocalls and telling them to "stop" the robocalls continued.

6.      "The Federal Government receives a staggering number of complaints about robocalls---3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *William P. Barr v. American Association of Political Consultation* 2020 WL 3633780 – S.Ct.-- (2020).

7.      Despite complaints from Plaintiff, and a plethora of other "wrong number" non-customers made directly to Credit One, they continue to call the very numbers they know they know they don't have legal permission to call.

8.      Credit One calls so many numbers they don't have permission to call that they have created different codes to describe them. One such code is literally "wrong number".

9.      Credit One's "robo-blaster" is set to continue to call people despite their own records indicating they are calling "wrong number".

10.     Credit One's "robo-blaster" is set to continue to call people despite their own codes indicating they are calling someone without the requisite consent.

CLASS ACTION COMPLAINT

11.  The reason why Credit One indiscriminately robocalls consumers with no regard for the TCPA is simple, money.

12.  Credit One is the largest serial violator of the TCPA.

13.  Credit One has been the target of hundreds federal lawsuits and thousands of state and arbitration cases all asserting violations of the TCPA.

14.  Credit One is not a traditional bank as their name suggest but a credit card company that boasts how it targets low income borrowers they refer to as "sub-prime" borrowers.

15.  Credit One's business model weaponizes their 1 million+ calls per day "robo-blaster" to collect extraordinarily high interest credit card debt from low income people by hiring cheap labor from other countries like an overseas loan shark.

16.  Credit One does not take no for an answer and will continue to call despite the caller explaining they don't owe Credit One any money and are not the person they are asking for.

17.  Credit One knows the low-income people they collect money from often do not even have enough money to pay their phone bills and as a result their phone services are frequently turned off and reassigned to another person.

18.  The collateral damage to Credit One's reckless robo-model are the people like Ms. Johnson who had a reassigned number, began receiving robocalls, asked for the calls to stop and they did not.

19.  Credit One's practice of robocalling people without their "express consent" is simply the way they do business. When they get caught they typically settle confidentially and pay "hush money" so America and the Courts do not know the extent of their lawless behavior; and then continue to break the law.

20.  Credit One has not yet been held responsible for its nationwide evasion of our country's anti-robodialing law. The goal of this lawsuit is to remedy this injustice and enjoin Credit One from continued violations of the TCPA.

CLASS ACTION COMPLAINT

## TELEPHONE CONSUMER PROTECTION ACT

21.     "A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30821 (1991)." *William P. Barr v. American Association of Political Consultation* 2020 WL 3633780 – S.Ct.-- (2020) at * 3.

22.     Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call and decided that 'banning' such calls made without consent was the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227.

23.     The Supreme Court of the United States found that Americans suffer an invasion of their privacy from these calls that violate the TCPA. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

24.     Unwanted and illegal robocalls are the #1 consumer complaint in America, year after year for the last decade.  From 2014 to 2019, the Federal Trade Commission (FTC) alone has reported 30.4 million unwanted robocall complaints.[1]

25.     Credit One has also been the Defendant in numerous federal class actions: *A.D. v. Credit One Bank, N.A.,* No. 14 C 10106, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016), *rev'd and remanded*, 885 F.3d 1054 (7th Cir. 2018);  *Bridge v. Credit One Fin.,* No. 2:14-CV-1512-LDG-NJK, 2016 (D. Nev.); *Burke v. Credit One Bank,*

---

[1] *See* https://www.ftc.gov/policy/reports/policy-reports/commission-staff-reports/national-do-not-call-registry-data-book-fy-9; https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2019/dnc_data_book_2019.pdf] It is noteworthy, the actual number of people that receive unwanted and illegal robocalls during the past 5 years is estimated to be in the Billions. The 30.4 million number is obviously from individuals that knew how to file a formal complaint with only the FTC and took the time to do so.

*N.A.*, No. 818CV00728EAKTGW, (M.D. Fla.). Thus far Credit One has escaped liability and this has only emboldened its practice of illegal robodialing.

26.   A class action is clearly the only way to halt or even slow Credit One's violation of the TCPA.  "Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter  activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that that allows for resolution of issues without extensive individual complications." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). Credit One banks on the fact that the vast majority of people don't know how to find a lawyer to stop Credit One's abusive robocall practice.

27.   The TCPA was enacted to prevent companies like Credit One from invading American citizens' privacy and prevent illegal robocalls but thus far Credit One has avoided being held accountable for its nationwide systemic practice of calling people illegally.

28.   According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. This type of damages shared by the Ms. Johnson and the class members is the same.

## JURISDICTION AND VENUE

29.   Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331 and 47 U.S.C. §§ 227, *et seq*.

30.   Because Credit One conducts business within the State of Nevada, personal jurisdiction is established.

31. Venue is proper in the District of Nevada because a substantial part of the actions giving rise to this action occurred within this judicial district, Credit One resides within this district, and the harm to Ms. Johnson occurred within this judicial district.

## PARTIES

32. Ms. Johnson is, and at all times mentioned herein was, a citizen of the United States and a "person" as defined by 47 U.S.C. § 153(39). Ms. Johnson is a natural person and citizen of Nevada, residing in Nevada and has the Nevada telephone number of (775) 537-####. (redacted for privacy purposes)

33. Credit One is a national banking association which conducts business in the State of Nevada and across the United States with a principal place of business or headquarters located at 6801 S. Cimarron Road in Las Vegas, Nevada. Credit One is a "person" as defined by 47 U.S.C. §153(39).

## FACTUAL ALLEGATIONS

34. Plaintiff incorporates each of the allegations in all other paragraphs as if fully stated herein.

35. Credit One called (775) 537-####.

36. Credit One called Ms. Johnson in November 2018.

37. Credit One called Ms. Johnson with a pre-recorded message.

38. Credit One called Ms. Johnson from one of its overseas calling centers.

39. Credit One called Ms. Johnson using an ATDS in November 2018.

40. Ms. Johnson told Credit One they had the wrong number.

41. Ms. Johnson asked Credit One to stop calling her.

42. Credit One told Ms. Johnson that they were looking for an individual that she did not know and Ms. Johnson told Credit One she did not know the individual they were looking for.

43. Credit One records its telephone conversations and has recordings of its calls with Ms. Johnson.

44.     Credit One continued to call Ms. Johnson despite her requests to cease calls and despite putting Credit One on notice they were calling the wrong number and a number they did not have the required express consent to call Ms. Johnson.

45.     Ms. Johnson estimates she had 25 calls after she first instructed Credit One to stop calling and told Credit One that they had the wrong number.

46.     Ms. Johnson never provided her cellular telephone number to Credit One.

47.     Credit One is well aware that it must have prior express consent to robocall cell phones per the TCPA.

48.     Despite this knowledge Credit One employs little to no safeguards to make sure it is following the law.

49.     Credit One does not scrub its numbers to determine if the number Credit One is calling is assigned to a cellular telephone.

50.     Credit One does not scrub its telephone numbers to confirm that it actually has prior written express consent of the called party prior to calling that person's telephone number.

51.     Credit One's policy is to robo-blast first and ask questions later.

52.     Credit One knows many of its customers do not even have enough money to pay their phone bills, and Credit One is aware that its customers' telephone numbers are then reassigned to another individual who may be in a similar economic position.

53.     Credit One continues to call numbers they know have been reassigned; therefore, Credit One knows that it is calling numbers it doesn't have consent to call.

54.     Credit One knows of numerous sources that it could use to check to determine whether a number is reassigned.

55.     Credit One knows it can easily check if the number it is calling is a cellular telephone, but fails or refuses to do so.

56.   From 2016 through 2020, Credit One has had no written procedure in place to scrub telephone numbers to confirm that they were cellular telephone numbers.

57.   From 2016 through 2020, Credit One has had no written procedure in place whether the number it was calling was reassigned.

58.   Ms. Johnson is the "called party." *See N.L. Lemon v. Credit One Bank* 960 F.3d 1164 (9th Cir. 2020) (a glaring example of the reckless conduct of Credit One and its failed attempt to avoid liability under the TCPA).

59.   Credit One called Ms. Johnson telephone number in an attempt to collect a debt.

60.   Credit One never had express consent from Ms. Johnson to place any robo-calls to her cellular telephone number.

61.   Ms. Johnson answered a phone call and there was a noticeable pause before an individual with a heavy foreign accent said they were calling from Credit One.  Ms. Johnson informed Credit One that it had the wrong number and to stop calling her.

62.   Credit One has an illegal track record of continuing to call individuals such as Ms. Johnson despite knowing they are calling the "wrong number" or a number they don't have express consent to call.

63.   Each call Credit One made to the Ms. Johnson's aforementioned cellular telephone number was done so without the "express permission" of the Ms. Johnson.

64.   Ms. Johnson is the regular user and carrier of the cellular telephone number at issue, (775) 537-####.

65.   Credit One concedes it made one (1) call to (775) 537-#### within the past 4 years.

66.   Credit One concedes it made at least twenty (20) calls to (775) 537-#### within the past 4 years.

67.     Credit One made at least one (1) call to (775) 537-#### from its overseas call center.

68.     Each call Credit One made to (775) 537-#### was with the same telephone system.

69.     Federal Courts have ruled the telephone system Credit One used to call (775) 537-#### is an ATDS.

70.     Federal Courts have ruled that Credit One has harassed individuals in the United States.

71.     Each cellular telephone call Credit One made to Ms. Johnson was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

72.     Credit One willfully violated the TCPA with respect to Ms. Johnson each time Credit One made a call to Ms. Johnson's cellular telephone without having express consent to place such calls using an ATDS.

73.     Credit One knowingly violated the TCPA with respect to Ms. Johnson each time Credit One made a call to Ms. Johnson's cellular telephone after Ms. Johnson revoked any purported consent the Credit One may claim it had to call Ms. Johnson's cellular telephone number using an ATDS.

74.     Credit One repeatedly placed non-emergency telephone calls to the wireless telephone number of Ms. Johnson using an automatic telephone dialing system without Ms. Johnson's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

75.     By utilizing these unlawful phone calls, Credit One have caused Ms. Johnson the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

76.     Credit One's aggravating and annoying phone calls trespassed upon and interfered with Ms. Johnson's rights and interests in her cellular telephone and cellular telephone line, by intruding upon her seclusion.

77.     Credit One's phone calls harmed Ms. Johnson wasting her time, trespassed on her phone, invaded her privacy, deprived her of the utility of use of her cellular phone, as well as caused aggravation, distraction, and inconvenience.

78.     Moreover, "wireless customers [like Ms. Johnson] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007).

79.     Credit One's phone calls harmed Ms. Johnson by depleting the battery life on her cellular telephone, and by using minutes allocated to Ms. Johnson by his cellular telephone service provider.

80.     Despite actual knowledge of their wrongdoing, Credit One continues its illegal scheme of unwanted robocalls.

81.     Credit One was Ordered to produce a sample of data from another class action lawsuit captioned *Bridge v. Credit One Fin.,* No. 2:14-CV-1512-LDG-NJK, 2016 (D. Nev.) where Credit One made 350,000,000 robocalls in a 34-month period. In the *Bridge* case, Credit One actually admitted in federal court filings that a jaw-dropping 3,500,000 robocalls were made to people even though the telephone number had a Credit One disposition code "Wrong Number" or "Block/DNC Ever."

82.     Shockingly Credit One continues to call telephone numbers even if they're marked with "Wrong Number" or "Block/DNC Ever" in their own system databases.

83.     What is more concerning is that Credit One has grown exponentially since the *Bridge* case in 2014, and as a result the number of victims of its illegal conduct has also grown exponentially as well.

84.    Credit One has a corporate "profits over people" policy of using an ATDS to collect debts from individuals across the country despite the collateral damage and invasions of privacy it causes.

85.    Credit One willfully and/or knowingly violated the TCPA with respect to the Ms. Johnson and the members of the class.

## CLASS ACTION ALLEGATIONS

86.    Ms. Johnson restates each of the allegations in all other paragraphs as if fully stated herein.  Ms. Johnson, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

87.    The TCPA makes it illegal to robo-call an individual's cell phone. The applicable exception to this law is if the robo-caller has "express consent" to call. This case is about robo-calls to people where Credit One never had consent and where its own records indicated it was calling a "Wrong Number."

88.    Ms. Johnson seeks to certify the following class (the "Class"), subject to amendment:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Credit One placed a non-emergency telephone call relating to a Credit One debt (4) using substantially the same system(s) that were used to telephone Ms. Johnson (5) within 4 years of the complaint and (6) where Credit One did not have express consent to call said cellular telephone number.

89.    The Wrong Number subclass (the "Subclass") consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Credit One placed a non-emergency telephone call relating to a Credit One debt (4) using substantially the same system(s) that were used to telephone Ms. Johnson (5) within 4 years of the complaint and (6) where Credit One did not have express consent to call said cellular telephone number and (7) where Credit One's records indicate "Wrong Number" or similar notation and (8) where Credit One's records indicate they have called a number without express consent to call said cellular telephone number.

90.    Ms. Johnson represents and is a member of the Class and the Subclass. Excluded from the Class and the Subclass are Credit One and any entities in which Credit One has a controlling interest, Credit One's agents and employees, the Judge

to whom this action is assigned, and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

91.    Ms. Johnson is presently unaware of the exact number of members in the Class or the Subclass, but based upon the size and scope of Credit One's business, Ms. Johnson reasonably believes that the number of class members to be, at a minimum, in the thousands.

92.    Ms. Johnson and all members of the Class have been harmed by Credit One's actions.

93.    This Class Action Complaint seeks money damages and injunctive relief.

94.    The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

95.    The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The class members can be easily identified through records maintained by Credit One.

96.    There are questions of law and fact common to the members of the Class and the Subclass, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

(1) Whether within the four years prior to the filing of this Complaint, Credit One engaged in a pattern of using an ATDS to place calls to cellular telephones without the prior express consent of the called party;

(2) Whether Defendant can meet its burden of showing it obtained and had valid prior express consent (i.e., consent that is clearly and unmistakably stated);

(3) Whether Credit One's conduct was knowing or willful;

(4) Whether Ms. Johnson and the Class and/or Subclass members were damaged thereby, and the extent of damages for such violations by Credit One;

(5) Whether Credit One should be enjoined from engaging in such conduct in the future; and

(6) Whether Ms. Johnson and the Class and/or Subclass are entitled to any other relief.

97. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, all within the meaning of the TCPA, Ms. Johnson asserts claims that are typical of the members of the Class.

98. Ms. Johnson will fairly and adequately represent and protect the interests of the Class, and Ms. Johnson does not have an interest that is antagonistic to any member of the Class.

99. Ms. Johnson has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

100. A class action is the superior method for the fair and efficient adjudication of this controversy.

101. Class-wide relief is essential to compel Credit One to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Credit One is small because the statutory damages in an individual action for violation of the TCPA are minimal.

102. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

103.  Credit One has acted on grounds generally applicable to the Class and the Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate.

104.  The TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I

### Violations of the TCPA

### 47 U.S.C. §§ 227, et seq.

105.  Ms. Johnson restates each of the allegations in all other paragraphs as if fully stated herein.

106.  The foregoing acts and omissions of Credit One constitute numerous violations of the TCPA with respect to Ms. Johnson and members of the Class and the Subclass.

107.  As a result of Credit One's illegal conduct, Ms. Johnson and each of the members of the Class and Subclass suffered damages and, under § 227(b)(3)(B), are entitled to, *inter alia*, $500.00 in damages for each and every such negligent violation of the TCPA.

108.  As a result of Credit One's illegal conduct, Ms. Johnson and each of the members of the Class and Subclass suffered damages and, under § 227(b)(3)(B), are entitled to, *inter alia*, up to $1500 per call for each and every knowing and/or willful violation of the TCPA.

109.  Ms. Johnson and class members are also entitled to and seek injunctive relief prohibiting Credit Ones from violating the TCPA in the future.

//
//
//
//
//

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Johnson respectfully requests that the Court grant the following relief and enter judgment in favor of Ms. Johnson and the class members, and against Credit One:

- An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Ms. Johnson is a proper representative of the Classes, and appointing the lawyers and law firms representing Ms. Johnson as counsel for the Classes;

- An order declaring that Credit One's conduct described herein was in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq.

- Injunctive relief requiring Credit One to cease calling any person without obtaining the called person's prior express consent to receive such telephonic communications via the use of such equipment to ensure that Ms. Johnson and the class members are protected from further violations of the TCPA the future;

- An injunction requiring Credit Ones to file quarterly reports of third-party audits with the Court on its system and procedures not to call any person where Credit One's own system indicates they have the wrong number to ensure that Ms. Johnson is not called in the future;

- An award of statutory damages for Ms. Johnson and each class member in the amount of $500.00 for each and every negligent violation of the TCPA;

- An award of treble damages, as provided by statute, of up to $1,500.00 for Ms. Johnson and each class member for each and every call that constituted a knowing and/or willful violation of the TCPA;

- An award of reasonable attorney's fees and costs to Ms. Johnson's counsel;

- Post-judgment interest as may be allowed by law; and

- Any such further and other relief the Court deems reasonable and just.

CLASS ACTION COMPLAINT

## TRIAL BY JURY

110.   Ms. Johnson is entitled to and respectfully demands a trial by jury on all issues so triable.


DATED this 1st day of October 2020.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**


By:   s/ Gustavo Ponce
GUSTAVO PONCE, ESQ.
6069 S. FORT APACHE ROAD, SUITE 100
LAS VEGAS, NEVADA 89148
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT